

FILED
JUN 27 2013
Judge Samuel Der-Yeghiayan
U.S. District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 11 CR 15 |
| vs. | ) | Judge Samuel Der-Yeghiayan |
| | ) | |
| GALIN FILEV | ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant GALIN FILEV, and his attorney, ROBERT S. NATHAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341 (Count One), wire fraud, in violation of Title 18, United States Code, Section 1343 (Count Two), and bank fraud, in violation of Title 18, United States Code, Section 1344 (Counts Three and Four).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with mail fraud, in violation of Title 18, United States Code, Section 1341.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

At all times material, Argent Mortgage, Countrywide, CitiMortgage, Bank of America, and Washington Mutual were lenders. These lenders required loan applicants to provide truthful information – including but not limited to the borrower's citizenship, employment, income, financial condition, intention to occupy the property purchased, and other mortgage liabilities – which was material to the approval, terms, and funding of loans. Defendant, a Bulgarian citizen, resided in Wheeling, Illinois.

Beginning at least as early as in or about July 2005 and continuing until in or about March 2006, in the Northern District of Illinois, and elsewhere, defendant, along with others, knowingly devised, attempted to devise, and participated in a scheme to defraud and to obtain money and property from lenders by means of materially false and fraudulent pretenses, representations, promises, and by material omissions, as described below.

### Washington Mutual Line of Credit

On January 10, 2006, defendant knowingly submitted to Washington Mutual a loan application containing materially false representations for a small-business line of credit loan in the amount of $50,000. In the loan application, defendant knowingly and falsely represented that his business BG Chicagoland Remodelers earned $646,000 in annual revenue and that he was a U.S. citizen. Based in part on the false information submitted in defendant's loan application, on January 13, 2006, Washington Mutual provided the $50,000 line of credit to defendant. Defendant withdrew a total of $29,850 from this line of credit in three withdrawals on January 23, January 26, and February 2, 2006.

### Bank of America Line of Credit

On January 11, 2006, defendant knowingly submitted to Bank of America a loan application containing materially false representations for a small-business line of credit in the amount of $95,000. In the loan application, defendant knowingly and falsely represented that his business BG Chicagoland Remodelers earned $646,000 in annual revenue and that he was a U.S. citizen. Based in part on the false information submitted in defendant's loan application, on January 19, 2006, Bank of America provided the $95,000 line of credit to defendant. Defendant withdrew a total of $95,000 from this line of credit in two withdrawals on February 2 and February 10, 2006.

### The Frontage Property

On February 1, 2006, defendant knowingly submitted loan applications containing materially false representations to Argent Mortgage to obtain mortgage

loans in the amount of $320,000 and $80,000 in order to purchase a residence located on Frontage Road in Chicago, Illinois (the "Frontage Property"). In the loan applications, defendant knowingly and falsely stated that he was a United States citizen, earned $11,250 per month through his self-employment as President of BG Chicagoland Remodelers, and that the Frontage Property was to be his primary residence.

On February 17, 2006, defendant purchased the Frontage Property for $400,000. At the property closing, defendant signed a copy of the loan applications indicating that the representations contained therein continued to be true and accurate, well knowing they were false.

Moreover, during the closing, defendant signed the HUD-1 Settlement statement, representing that the seller would receive loan proceeds of $151,523.50. In the HUD-1, defendant knowingly failed to disclose $25,600 in payments he was to receive from the seller. Those funds were transferred to defendant's bank account after the closing.

Finally, on February 17, 2006, defendant knowingly caused a payoff check in the amount of $240,402 for the Frontage Property to be sent via UPS, an interstate commercial carrier, from Greater Illinois Title Company in Wheaton, Illinois, to Kalamazoo, Michigan.

### The Spaulding Property

On January 31, 2006, defendant knowingly submitted loan applications containing materially false representations to Countrywide and Citimortgage to obtain

4

mortgage loans in the amount of $440,000 and $110,000 in order to purchase a residence on Spaulding Avenue in Chicago, Illinois (the "Spaulding Property"). In the loan applications, defendant knowingly and falsely stated that was a United States citizen, earned $16,350 ~per month~ through his self-employment as President of BG Chicagoland Remodelers, and that the Spaulding Property was to be his primary residence.

On March 2, 2006, defendant purchased the Spaulding Property for $550,000. At the property closing, defendant signed a copy of the loan applications indicating that the representations contained therein continued to be true and accurate, well knowing they were false. In the loan applications, defendant also intentionally omitted the mortgage loan liabilities that he had incurred through his purchase of the Frontage Property, well knowing that he had incurred mortgage liabilities secured by the Frontage Property approximately two weeks prior.

Moreover, during the closing, defendant signed the HUD-1 Settlement statement, representing that the seller would receive loan proceeds of $266,357.67. In the HUD-1, defendant knowingly failed to disclose $1,600 in payments he was to receive from the seller. Those funds were transferred to defendant's bank account after the closing.

In total, defendant fraudulently obtained at least six loans totaling approximately $955,000 and caused a loss of approximately $338,000 to Argent Mortgage, CitiMortgage, Washington Mutual, and Bank of America. Moreover, in early 2006, defendant wired over $93,000, including money he received from the transactions

5

described above, to bank accounts in Bulgaria. In late February or early March 2006, defendant left the United States for Bulgaria.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii. The offense level is increased 12 levels because the loss amount resulting from the offense and relevant conduct was more than $200,000 but less than $400,000, pursuant to Guideline § 2B1.1(b)(1)(G).

iii. It is the government's position that defendant's offense and relevant conduct involved sophisticated means, thus defendant's offense level is increased by 2 levels pursuant to Guideline § 2B1.1(b)(10)(C). Defendant reserves the right to challenge the application of this enhancement.

iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, it is the government's position that the defendant's offense level is 18, which, when combined with a criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant

understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f.  Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10. Each party is free to recommend whatever sentence it deems appropriate.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12. Regarding restitution, defendant acknowledges that the total amount of restitution owed to: (a) Argent Mortgage is $152,000; (b) CitiMortgage is $62,000; (c) Bank of America is $95,000, and (d) Washington Mutual is $29,850, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

13. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment, as well as the forfeiture allegation as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

**Nature of Agreement**

16. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 11 CR 15.

17. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

18. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors

for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii. With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

19. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

20. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax

information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

24. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 6·27·13

_C. K. Kas_ for G.S.S.
GARY S. SHAPIRO
United States Attorney

GALIN FILEV
Defendant

WILLIAM E. RIDGWAY
Assistant U.S. Attorney

ROBERT S. NATHAN
Attorney for Defendant